[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON PLAINTIFF'S RIGHT TO PREJUDGMENT REMEDY
In this case the plaintiff claims that she and her child were victims of assault and battery at the hands of the plaintiff. She has also brought on her own behalf and on behalf of her child claims for negligent and intentional infliction of emotional distress.
The plaintiff appears to concede or recognize that the defendant has no assets such as property, bank accounts or personal property which she is able to attach. The plaintiff still seeks a prejudgment remedy under § 52-278a et seq. of the Connecticut General Statutes. She seeks to attach or as she states place what is tantamount to a "lien" on one or more claims the defendant has in motor vehicle negligence actions against third parties. Notice of any such attachment could then be filed with counsel for the defendant or any insurance company to the effect that when and if these negligence cases are settled the plaintiff would have a right to a portion of any proceeds up to the amount of the attachment the court determines is appropriate. CT Page 2322 The Court has continued the hearing on the appropriate amount of the attachment in order to first decide whether a prejudgment remedy should lie under our statutes.
Courts have the power to grant prejudgment remedies pursuant to the procedure set forth in § 52-278 (d). Section 52-278a(d) defines "prejudgment remedy["] and states that the remedy lies against "property." "Property" is defined in § 52-278 (e) as: ". . . any present or future interest in real or personal property, goods, chattels, or choses in action, whether such is vested or contingent." By ordinary understood applications of the English Language, the plaintiff must concede that a pending negligence claim is not "real property", "personal property" "goods" or "chattels." Relying on the definition contained in Black's Law Dictionary, however, the plaintiff argues that such a claim is a "chose in action." The plaintiff then generally refers to 6 Am.Jur.2d "Attachment and Garnishment", § 110, page 639 which states that under modern attachment statutes "choses in action" and other intangible property may be attached. It is also true that Black's often uses generalities. But even a resort to Black's does not appear to aid the plaintiff's position. In the definition given, the words "chose in action" do not appear to refer to unliquidated claims and general demands or rights to recovery of some undetermined amounts. Also, immediately preceding the definition of "chose in action" appears the word "chose", of which "chose in action" is merely a subtype."
"Chose" is defined in Black's as follows:
 "Chose/sho'wz/Fr. A thing. An article of personal property. A chose is a chattel personal and is either in action or possession. See chose in action, chose in possession, infra"
"Chattel" is described as: "an article of personal property as distinguished from real property. A thing personal and movable. It may refer to animate as well as inanimate property." In Black's a portion of the definition of "Property" is illuminating — there it says property is everything that has an exchangeable value or which goes up to make wealth or estate." There is no readily ascertainable exchange value at the present time for these negligence claims so they are not a "chose". A case cited by Black's in the "chose in action" definition, Moran v. Adkerson,
79 S.W. 249 250 (1935), illustrates that unliquidated undetermined claims are not part of the definition or what is assumed in the CT Page 2323 discussion.
In that case, the court described as being within the general definition of a "chose in action": "a right to receive or recover a debt or money". In that case actual proceeds in cash and notes of a definite amount were the subject of the suit.
Early Connecticut case law seems to confirm the foregoing view. Thus in Humphrey v. Gerard, 83 Conn. 346 (1910) the court in dicta equated attachments with executions and reasoned as follows:
 "It is the policy of our law that all the property of a debtor should be responsible for his [sic] debts, and in consonance with this policy we have held that our statutes regulating attachments and executions subject to these processes certain equitable interests in property", id. p. 355.
The Court went on to say as to executions: "But not all interests in property can be appropriated by a levy of execution upon the property. That of a mortgagee cannot . . . In a like manner an interest which is so indeterminate, uncertain or contingent that it is incapable of being appraised or sold with fairness to both the debtor and creditor, may not be thus levied upon," id. p. 355. The court cited the earlier case of Smith etal v. Gilbert, 71 Conn. 149 (1898) which dealt with the right of attachment and held that:
 "We have, however, never held that an uncertain interest, incapable of just appraisal, and possibly of no value, may be thus sequestered for the creditor's doubtful benefit, and we think we ought not to so hold. When an interest which may be strictly neither goods nor land is nevertheless clearly property, capable of being fairly sold and appraised, which is subject to the debtor's control, and which ought to be responsible for his debts, we say that the policy of the State for two hundred and fifty years clearly indicates that such interest is attachable property within the meaning of the statute." id. p. 155.
The negligence claims against third parties are an "uncertain interest", "incapable of just appraisal", "possibly of no value" and likewise should not be "sequestered for the (plaintiff's) CT Page 2324 doubtful benefit." The statutory scheme and language supports these observations in the case law. In § 52-278 (c)4(b) the "Application for Prejudgment Remedy" states the person moving for the attachment must ask "to attach sufficient property of the defendant to secure such sum." The "sum" referred to being the amount of possible recovery as a result of litigation. What could the underlined phrase mean if it is taken to refer to requested liens on unliquidated claims of possibly no value. Section 52-278 (d) refers to the power of the court to order that bonds be posted to protect a defendant's interest "in the property that is subject to the prejudgment remedy." How could the interest in the value of this property be calculated? The statutory scheme is talking about definite claims for amounts certain or capable of ascertainment; whether they be contingent or equitable, present or future is unimportant but they must be ascertainable and have an exchange value.
Whether claims like the plaintiffs should be recognized or even can be intelligently accommodated in statutory language is not before the court. The present statutory language and how it has been construed is controlling.
The court does not believe that a prejudgment remedy by way of attachment should be under §§ 52-278 (a) et seq. against the negligence claims of the defendant against third parties.
CORRADINO, J.