DANIEL F. O'CONNOR, ADMINISTRATOR, *vs.* THE HARTFORD ACCIDENT AND INDEMNITY COMPANY.

Second Judicial District, Norwich, October Term, 1921.
WHEELER, C. J., BEACH, GAGER, CURTIS and BURPEE, Js.

To impair the obligation of a contract is to weaken it, or lessen its value, or make it worse in any respect or in any degree.

Any law which changes the intention of the parties to a contract, or its legal effect, giving to one party a greater, and to the other a less, interest or benefit therein, or making any deviation from its terms by hastening or postponing the time of performance which it prescribes, or imposing conditions not included therein, or dispensing with the performance of those included, however small and unimportant they may appear to be in their effect, impairs the obligation of a contract.

The legislature may regulate the remedy and the methods of procedure

O'Connor *v.* Hartford Accident & Indemnity Co.

under a past as well as a future contract, but it may not impose new restrictions upon the enforcement of a past contract, so as materially to lessen its value and benefit to either party.

By Chapter 331 of the Public Acts of 1919, every insurance company issuing a policy insuring against loss or damage on account of bodily injury or death by accident, or damage to property, is made absolutely liable for any loss occurring under the policy, and payment thereof is not to depend upon the satisfaction by the assured of a final judgment against him for such loss. It is further provided that the contract of insurance shall not be canceled by any agreement between the insurer and the assured after the latter has become responsible for such loss or damage; and that if a judgment against the assured is not paid within thirty days after it is rendered, the insurer may be made defendant in an action to the extent of its liability to the assured. *Held* that this statute, if applied to change contracts of insurance previously made, would impair the obligations thereof; but that it was not intended to and did not apply to any contract in existence when it took effect.

Statutes are always to be presumed to be intended to operate prospectively.

The defendant was surety upon a bond given to the plaintiff to release an attachment made in an action against one Z for damages for causing the death of the plaintiff's intestate by negligence, the bond being conditioned that if Z should pay the sum of $2,500 toward the satisfaction of any judgment recovered against him in the action, or should pay the actual value of his interest, not exempt from attachment and execution, in the property attached, not exceeding $2,500, then the bond should be void, but otherwise in full force and effect. The accident for which the suit was brought occurred after Chapter 331 of the Public Acts of 1919 took effect, prior to which Z had taken out a policy of insurance indemnifying him against loss by reason of his legal liability for bodily injuries or death accidentally sustained by any person by reason of Z's ownership or maintenance of an automobile during a period which included the time of the accident. The policy provided, however, that either party might cancel it upon notice, and that the insurer should not be liable to suit until the amount of the loss was fixed by judgment, or by agreement between the parties with the written consent of the insurer. The plaintiff recovered judgment against Z for $10,000, and thereafter the insurer paid the plaintiff $5,367.61, that being the full amount of its liability, taking a release from the plaintiff accordingly. *Held* that the statute did not apply; that the payment by the insurer was one made for and in behalf of Z and toward the satisfaction of the judgment, and hence the plaintiff had received all he was entitled to under the terms of the bond and could not maintain an action thereon against the surety.

*It seems* that this would have been equally true if the statute had applied and by virtue of it the proceeds of the policy had become the property of the plaintiff,—because it would be the property of the defendant thus transferred to the plaintiff for the specific and exclusive purpose of paying his judgment in part.

Argued October 18th—decided November 30th, 1921.

ACTION against the surety in a bond substituted for an attachment, alleging breach of condition by the principal, brought to the Superior Court in New London County where a demurrer to the reply was overruled, *Wolfe, J.*, a demurrer to the rejoinder was sustained and judgment rendered (*Banks, J.*) on the pleadings for the plaintiff, for $2,415.55, from which the defendant appealed. *Error; judgment to be entered for defendant.*

The plaintiff's intestate died July 25th, 1919, because of injuries accidentally sustained by her on that day and caused by the negligence of Harry Zavaritis in operating his automobile. On the same day, the plaintiff brought an action against Zavaritis to recover damages on this account, and therein placed an attachment on the property of Zavaritis, consisting of money deposited by him in a savings-bank. The actual value of Zavaritis' interest in this property, not exempt from attachment and execution, was at that time $2,339.52. Subsequently this attachment was dissolved upon the substitution of a bond in the sum of $2,500, taken to the plaintiff, in which Zavaritis was principal and this defendant was surety, and in which the condition was as follows: "Now therefore, if the said Harry Zavaritas shall pay toward the satisfaction of any judgment which may be recovered against him in said action, the sum of twenty-five hundred (2500) dollars or in default of such payment shall pay the officer having the execution issued on such judgment, on demand, the actual value of the interest not exempt from attachment and execution, of the said Harry Zavaritas in

said attached property above described at the time of said attachment, not exceeding the sum of twenty-five hundred (2500) dollars, then this bond shall be void, but otherwise in full force and effect."

In March, 1919, the Travelers Insurance Company had made and delivered to Zavaritis its policy of insurance wherein it agreed with him, called "the assured," to "indemnify the assured against loss by reason of the liability imposed upon him by law for damages on account of" and "injuries accidentally sustained" by any person, "including death at any time resulting therefrom," "by reason of the ownership or maintenance" of his automobile, and by reason of accidents occurring between March 3d, 1919, and March 3d, 1920. The insurer agreed also "to defend in the name and on behalf of the assured" any suit brought on account of such injuries, and to pay all costs and all interest accruing after entry of judgment. This contract was expressly subject to the conditions, among others, that the policy might be canceled at any time by either party upon written notice, and that the unearned premium should then be returned to the assured; and that "no action shall lie against the Company to recover upon any claim or for any loss under" its provisions, "unless brought after the amount of such claim or loss shall have been fixed and rendered certain, either by judgment against the assured . . . or by agreement between the parties with the written consent of the Company." This policy appears in the record as Exhibit 1.

Pursuant to the terms of the policy, the Travelers Insurance Company undertook and conducted the defense in the action by the plaintiff against Zavaritis, which resulted in a judgment of $10,000 for the plaintiff. Upon appeal to the Supreme Court of Errors, this judgment was affirmed July 20th, 1920.

On August 25th, 1920, the Travelers Insurance Company paid to the plaintiff $5,367.61, and took from him a release and satisfaction of judgment in the following form: "In consideration of the sum of five thousand three hundred sixty-seven dollars and sixty-one cents (5,367.61) received to my full satisfaction of the Travellers Insurance Company of Hartford, Connecticut, I do hereby fully release and discharge said company and the Travellers Indemnity Company of Hartford, Connecticut, from any and all liability under or on account of the verdict and judgment for ten thousand (10,000) dollars and costs of suit rendered in and by the Superior Court for New London County in the case of Daniel F. O'Connor, Administrator of the Estate of Ellen M. O'Connor late of Groton, Connecticut, deceased, vs. Harry Zavaritas, and from any and all claims and demands of every nature growing out of or arising from said suit, and the subject matter thereof, and said judgment is hereby declared to be satisfied to the extent of the aforesaid sum of five thousand three hundred sixty-seven dollars and sixty-one cents (5,367.61)." This release appears as Exhibit B.

On September 21st, 1920, the plaintiff brought this action against this defendant, the surety on the bond substituted for the attachment in the suit against Zavaritis, setting up this bond and the final judgment in that suit, and alleging that Zavaritis had not paid, and upon demand on execution had refused to pay, $2,500 toward the satisfaction of that judgment. In its answer, this defendant set up that the Travelers Insurance Company had paid to the plaintiff "for and on behalf of said Harry Zavaritis, the sum of $5,367.61, toward the satisfaction of said judgment." This allegation the plaintiff denied in his reply, and, referring to the policy of insurance, set up the claim that the insur-

ance company "discharged its liability thereunder upon the judgment mentioned in the complaint by paying to the plaintiff" the sum named, and referring to the satisfaction of judgment, Exhibit B, quoted above. To this reply the defendant demurred, because it appeared therefrom and from Exhibit B that the payment was made for and on behalf of Zavaritis toward the satisfaction of the judgment. This demurrer was overruled.

The defendant then filed a rejoinder in which it repeated its assertions concerning the payment made to the plaintiff by the Travelers Insurance Company, and further alleged that the policy of insurance was made before July 1st, 1919, and the Travelers Insurance Company was not liable thereunder to the plaintiff on account of the judgment in his suit against Zavaritis, and not liable at all, until the claim or loss had been fixed or rendered certain by judgment or agreement between the parties, according to the terms of the policy. The plaintiff demurred to this rejoinder because it had been disposed of in part by the demurrer to the reply, and because it was immaterial that the policy was issued before July 1st, 1919, inasmuch as it was in force the day when the plaintiff's intestate died. This demurrer was sustained.

Thereupon the defendant amended its rejoinder by denying the allegations concerning the payment made by the Travelers Insurance Company, and the discharge and satisfaction expressed in Exhibit B. It was then stipulated that the plaintiff claimed that Exhibit B proved his material allegations, and that the defendant claimed that Exhibit 1 proved its; and no other evidence was offered. Thereupon the court rendered judgment for the plaintiff to recover from the defendant a sum equal to the amount of Zavaritis' deposit in the savings-bank at the time of the attachment in the suit against him, with interest.

*Arthur M. Brown* and *Charles V. James,* for the appellant (defendant).

*Arthur T. Keefe,* for the appellee (plaintiff).

BURPEE, J.   The defendant claimed that the payment made by the Travelers Insurance Company to the plaintiff, in the circumstances surrounding the transaction, discharged the defendant from liability as surety in the bond substituted for the attachment in the plaintiff's suit against Zavaritis, which is the basis of this action, and the condition of which is quoted in the foregoing statement of facts.   This claim was overruled by the court below in its decisions upon the demurrer to the reply and to the rejoinder.   In both memoranda of decision, the court applies the provisions of Chapter 331 of the Public Acts of 1919 to the facts and conditions disclosed by the pleadings, and its conclusions are controlled by this statute.   It declares that the payment made by the Travelers Insurance Company was made "under and by virtue of the statute in question," that "this fund, by force of the statute and not by any voluntary act on the part of Zavaritis, became the property of the plaintiff, to be applied toward the satisfaction of the judgment obtained by him," and that therefore this payment "did not fulfil the terms of the bond given by the defendant company."   We think this conclusion was erroneous.

It appears that the contract of insurance went into effect March 3d, 1919.   Chapter 331 of the Public Acts of 1919 took effect July 1st, 1919.   Public Acts of 1919, Chapter 225.   Hence, if the Act must be construed as applicable to this contract, the question arises whether it falls under the prohibition of § 10, Article First, of the Constitution of the United

States, because it impairs the obligation of a pre-existing contract, and is invalid to that extent. To impair the obligation of a contract is to weaken it, or lessen its value, or make it worse in any respect or in any degree. "The obligation of a contract includes everything within its obligatory scope." *Edwards* v. *Kearzey,* 96 U. S. 595, 600. Any law which changes the intention and legal effect of the original parties, giving to one a greater and to the other a less interest or benefit in the contract, impairs its obligation. The extent of the change is immaterial. Any deviation from its terms by hastening or postponing the time of performance which it prescribes, or imposing conditions not included in the contract, or dispensing with the performance of those that are included, however small and unimportant they may appear to be in their effect, impairs the obligation of a contract. *Green* v. *Biddle,* 21 U. S. (8 Wheat.) 1, 84; *Van Hoffman* v. *Quincy,* 71 U. S. (4 Wall.) 535, 552; *Woodruff* v. *State,* 3 Ark. 285; *Berdan* v. *Van Riper,* 16 N. J. L. 7, 11. The legislature may regulate the remedy and the methods of procedure under a past as well as a future contract, but it cannot impose new restrictions upon the enforcement of a past contract, so as materially to lessen its value and benefit to either party. *Green* v. *Biddle,* 21 U. S. (8 Wheat.) 1; *Tennessee* v. *Sneed,* 96 U. S. 69; *Crawford* v. *Branch Bank of Mobile,* 48 U. S. (7 How.) 279, 282; 12 Corpus Juris, 1084, 1086.

We think that it must be admitted that this statute, if it be applied to this contract of insurance, would impair its obligation in several particulars. One provision of the contract is that the policy of insurance may be canceled at any time by either party. The Act of 1919 declares in § 1: "No such contract of insurance shall be canceled or annulled by any agreement between the insurance company and the assured

after the said assured has become responsible for such loss or damage, and any such cancellation or annulment shall be void." It is also a condition of the contract that no action shall lie against the insurance company to recover on any claim or for any loss until the amount of such claim or loss shall have been fixed or rendered certain by judgment or by agreement made with the consent of the company. The Act in question provides that "every insurance company which shall issue" a policy to any person insuring against loss on account of death by accident of any person, "for which loss . . . such person . . . is legally responsible shall, whenever a loss occurs under said policy, become absolutely liable, and the payment of said loss shall not depend upon the satisfaction by the assured of a final judgment against him," etc. In these respects, at least, this legislation manifestly would take away or lessen valuable rights and benefits secured to one or both of the parties to the policy. It would change its terms respecting the time of performance; it would dispense with old conditions and impose new; and it would make it a worse contract in some respects for one party, and in some for the other. Therefore, this Act, if it be construed as effective upon this pre-existing contract, would impair the obligation of the contract, and must therefore be held invalid respecting it.

We think, however, that the language of the Act indicates plainly that it was not intended to and does not apply to any contract in existence when the Act took effect on July 1st, 1919. Its words are: "Every insurance company which shall issue a policy." Certainly that expression does not include a policy already issued. And continuing, it says that the insurer "shall, whenever a loss occurs under said policy," meaning a policy which any company "shall issue."

Courts are anxious to sustain the constitutionality of a legislative Act whenever they can do so by any reasonable interpretation. In this case, we think a construction of this statute which limits its effects to policies issued after it went into effect on July 1st, 1919, is the only construction that is reasonable. *Hartford* v. *Poindexter*, 84 Conn. 121, 135, 79 Atl. 79. Statutes are always to be presumed to be intended to operate prospectively. They should never be construed as having a retrospective effect unless their terms show clearly a legislative intention that they should so operate. *Humphrey* v. *Gerard*, 83 Conn. 346, 352, 77 Atl. 65; 36 Cyc. 1205.

The court below was mistaken when it said that this action was brought under § 2 of this Act of 1919. This plaintiff is not seeking to enforce any right which Zavaritis had against the Travelers Insurance Company under the insurance policy, and to which the plaintiff claimed to have been subrogated by this statute. This is a suit against another insurance company, not a party to the insurance policy, to enforce rights which belong to the plaintiff, not by reason of the policy nor by virtue of any statute, but under the bond substituted for the attachment, which was set up and annexed to the complaint as the basis of the action, and the condition of which is quoted in the above statement of facts. An essential allegation in the complaint is that Zavaritis had broken the obligation of this bond by refusing to make payment toward the satisfaction of the judgment against him. This allegation the defendant denied, and set up in defense that the Travelers Insurance Company had made the payment of a sufficient sum for and on behalf of Zavaritis toward the satisfaction of said judgment. This allegation the plaintiff denied in his reply, and coupled with his denial he sets out an

explanatory statement apparently intended to show that by this payment the company, "pursuant to" the policy of insurance, had "discharged its liability thereunder upon the judgment," as would appear in Exhibit B. This statement added nothing to the denial. In fact it was. in part untrue, for there was nothing in the policy pursuant to which the insurance company was required to make any payment to the plaintiff; and it was in part immaterial, because the alleged discharge of the insurance company from liability under the judgment did not tend to establish the liability of the defendant under the bond in suit. But the defendant filed a demurrer, which the counsel and the court below seem to have considered as if it raised a question of the influence or effect of the Act of 1919 upon the transaction set out in the answer, and thereupon the court ruled that the payment by the insurance company was made "under and by virtue of the statute in question," and that although the payment should be applied toward the satisfaction of the judgment, it did not completely satisfy the judgment, and therefore the principal in the bond had not been discharged.

This conclusion does not dispose of the only issue raised by these pleadings. The decisive question was not whether the principal was released entirely by the payment of a part of the judgment, but whether the surety was released by the payment of a sum larger than the amount the bond held it responsible for, made by it for the principal toward the satisfaction of the judgment. But upon this conclusion, and substantially the same conclusion concerning the demurrer to the rejoinder, the court reached a decision in favor of the plaintiff. In this decision and the failure of the court to draw correct legal inferences from the facts admitted with the pleadings, there was error.

What was, then, the legal effect of the payment made by the Travelers Insurance Company upon the obligation of the defendant under the bond which is the basis of this action? That company had agreed to "indemnify the assured against loss by reason of the liability imposed upon him by law for damages" on account of death caused by his negligence in operating his automobile. This judgment against him, if not satisfied, would, by reason of the liability imposed by it, effect a loss. From that loss he could be protected, so far as the insurance policy was issued to protect him, by giving him the sum of money fixed by the policy as the limit of the company's liability, to be by him paid to the plaintiff toward the satisfaction of the judgment, or to be retained by him to reimburse him for a payment already made. If with his authority or acquiescence, the insurance company paid the money directly to the plaintiff, it must be paid and applied toward the satisfaction of his judgment. By either process, the payment must be for and in behalf of the assured. In no other way could his indemnity be secured, and indemnity was his right under the contract. The proceeds of the policy were his property, subject to its terms, from the day when the amount of the loss was fixed by the judgment; and thereafter he had the power to control their disposition, and any disposition must be made at least on his behalf and for his benefit. Even if the Act of 1919 were applicable to this contract, the right in this property to which this plaintiff would be subrogated would be only this right to receive and apply this money toward the satisfaction of this judgment, as the assured would have used it, and with the same effect. The fact that the Travelers Insurance Company, as an incident of its direct payment, undertook to secure its dis-

charge from liability on account of the judgment, as appears in the release, Exhibit B, is of no importance. The payment was made none the less toward the satisfaction of the judgment, as the plaintiff himself admits in the last sentence of that exhibit.

It also appears that the plaintiff concedes that Zavaritis, the principal in the bond substituted for the attachment, may hold the benefit of this payment, but he maintains that the surety in that bond may not. This discrimination would certainly work an injustice, for which we think there is no necessity or excuse in equity or law. Under the attachment the plaintiff might have held the money in the savings-bank to apply toward the payment of his judgment, but for no other purpose. The bond on which this suit was brought released his hold on this money, and took its place. It changed the form but not the amount of the security to which the plaintiff might resort to satisfy his judgment. Its only purpose was to release this sum of money without risk to the plaintiff. The surety in the bond agreed merely that Zavaritis "shall pay . . . the actual value of the interest . . . of Zavaritis in said attached property," toward the satisfaction of any judgment. The effect of the words "Zavaritis shall pay" should not be restricted by any technical meaning. They do not mean that Zavaritis must do this act in person or with any specific property. It is sufficient if he caused any money belonging to him, and either in his possession or in his control, to be applied upon this judgment, or if any debtor or friend did such a thing for him. In any case, the obligee in the bond, the plaintiff in this action, would have received all he was entitled to claim under the terms of the condition in the bond; in every respect he would be as well off as he would be if the attachment on the money in the savings-bank had not been re-

leased upon the substitution of this bond. And we may add that this would be equally true, even if we could approve the plaintiff's claim that the proceeds of the insurance policy, "by virtue of the statute . . . became the property of the plaintiff"; because it would be the property of the defendant thus transferred to the plaintiff for the specific and exclusive purpose of paying his judgment in part.

The answer alleged the payment of a much larger sum of money than the value of Zavaritis' interest in the savings-bank deposit. Since this payment was admitted, the answer stated a complete defense. Hence the reply was open to attack by the demurrer, and the demurrer should have been sustained. Such action would have made further pleadings unnecessary, and with the stipulated addition and effect of Exhibit 1 (the policy) and of Exhibit B, it should have been followed by a judgment for the defendant.

There is error, and the cause is remanded for judgment for the defendant.

In this opinion the other judges concurred.